UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

SKYLER THOMAS RICE
Petitioner

VS.

ED GONZALEZ/SHERIFF OF
HARRIS COUNTY Respondent

§
§
§
§
§

Action # _____

United States Courts
Southern District of Texas
FILED

APR 15 2020

David J. Bradley, Clerk of Court

MEMORANDUM OF LAW IN SUPPORT OF
PETITIONER/PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION

## Statement of the Case

This is an emergency petition challenging detention because of danger posed to Petitioner Skyler T. Rice by the COVID-19 Pandemic. Petitioner pleads that the Court has subject matter jurisdiction over this case pursuant to Article 1, § 9, cl 2 of the United States Constitution Suspension Clause; the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution; 28 U.S.C. §1331 (federal question); 28 U.S.C. §1651 (All Writs Act); and 28 U.S.C. § 2241 (habeas corpus). Petitioner requests a TRO requiring that Respondents release him on his own recognizance for the pendency of his criminal proceedings. Petitioner is seeking emergency relief in either of two forms: a writ of habeas corpus or an injunction ordering Respondent/Defendants to immediately release Petitioner with appropriate precautionary public health measures on the grounds that his continued detention violates the Due Process Clause of the Fifth and Fourteenth Amendments.

## Statement of Facts

As stated in the declarations submitted with this Motion, the Plaintiff/Petitioner is confined at the Harris County Jail on Possession of a Controlled Substance charges. The Plaintiff has underlying health conditions that pose a significant risk of loss of health and life due to the COVID-19 Pandemic. Petitioner is an asmatic and has hypertension, both of which place Petitioner at a higher risk of death from the coronavirus (COVID-19). Social distancing and hygeine measures are Plaintiff's only defense against COVID-19. These protective measures are exceedingly difficult, if not impossible at the Harris County Jail where Petitioner shares toilets, sinks, phones, showers, eats in communal spaces, and is in close contact with the many other detainees and officers.

Social distancing of six feet would be impossible at the Harris County Jail. This concession supports the conclusion of multiple doctors and public health experts that "the only viable public health strategy available is risk mitigation... The public health recommendation is to release all people with risk factors from custody given the heightened risk to their health and safety.

## ARGUMENT

### POINT #1

### THE PLAINTIFF IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

In determining whether a party is entitled to a temporary restraining order or a preliminary injunction, courts generally consider several factors: whether the party will suffer irraparable injury, the "balance of hardships" between the parties, the likelihood of success on the merits, and the public interest. Each of these factors favors the grant of this motion.

### A. IRREPARABLE HARM

Petitioner is likely to experience irreparable injury absent an injunction both in the form of loss of health and life, and in the form of an invasion of his Constitutional rights

### 1. Loss of Health or Life from COVID-19

The on-going COVID-19 Pandemic creates a high risk that absent an injunction by this court, Petitioner will suffer irraparable harm in the form of loss of health or life as a result of contracting the COVID-19 virus.

On March 23, 2020, the Centers for Disease Control and Prevention (CDC) acknowledged that correctional and detention facilities "present unique challenges for control of COVID-19 transmission among incarcerated/ detained persons, staff, and visitors." Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, Centers for Disease Control (Mar. 23, 2020) https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html. Hereinafter "CDC Guidance 3/23/2020". Specifically, the CDC noted that many detention conditions create heightened risk of danger to detainees, these include: low capacity for patient volume, insufficient quarantine space, insufficient on-site medical staff, highly congregational enviroments, inability of most patients to leave the facility, and limited ability of incarcerated/detained persons to excercise effective disease prevention measures (e.g., social distancing and frequent hand-washing).

Though the CDC has recommended public health guidance for detention facilities and though the Harris County Jail has indeed implemented measures designed to prevent spread of the disease, these measures

are inadequate to insufficiently decrease the substantial likelihood that Petitioner will contract COVID-19. As prison officials are beginning to recognize around the country, even the most stringent precautionary measures—short of limiting detained population itself—simply cannot protect detainees from the extremely high risk of contracting this unique and deadly disease. For example, on April 1, 2020, the Rikers Island Jail Complex's Chief Physician acknowledged that "infections are soaring" despite the facility's "following Centers for Disease Control and Prevention guidelines and having moved mountains to protect our patients." Miranda Bryant, Coronavirus Spread at Rikers Island is a "Public Health Disaster"; Says Jail's Top Doctor, The Guardian (April 1, 2020), https://www.theguardian.com/us-news/2020/apr/01/rikers-island-jail-coronavirus-public-health-disaster.

Petitioner is 37 years of age and suffers from the following conditions, all most all of which place him at an increased risk of dire outcome from contracting the COVID-19 virus: Asthma, hypertension, PTSD, Depression, nicotine and opiod addiction.

See Centers for Disease Control, Groups at Higher Risk for Severe Illness (Apr. 2, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (noting that "people of all ages with underlying medical conditions are at higher risk for severe illness, particularly if the underlying medical conditions are not well controlled"). Additionally, Respondents have confined Petitioner in an environment where he shares toilets, sinks, phones, and showers, eats meals in communal spaces, and is in close contact with the many other detainees, officers, and visitors. Petitioners involuntary interaction with purportedly asymptomatic guards who rotate shifts is also a significant factor to exposure.

These are many of the conditions that the CDC has identified as being particulary likely to increase COVID-19 transmissions in detention facilities. CDC Guidance 03/23/2020. For these reasons the Petitioners confinement at the Harris County Jail renders him substantially likely to contract COVID-19 and his severe health conditions render him substantially likely to suffer irreparable harm or death as a result.

## 2. Violation of Constitutional Rights

Petitioner's Fifth Amendment Claim triggers a finding that the Petitioner will suffer irreparable harm absent an injunction. Petitioner alleges that in subjecting him to detention conditions that amount to punishment and that fail to ensure his safety and health Respondents are subjecting him to a substantial risk of serious harm in violation of his rights under the Due Process Clause. The alleged violation of a Constitutional Right is sufficient for a Court to find irreparable harm. See Overstreet v. Lexington-Fayette Urban Cty. Gov., 305 F.3d 566, 578 (6th cir 2002) (citing Connection Distrib. Co. v. Reno, 154 F.3d 281, 288 (6th cir 1998)). See also Rhinehart v. Scutt, 509 Fed. Appx. 510, 514 (6th cir 2013), (suggesting that allegations of "continuing violation of Eigth Amendment Rights" would trigger a finding of irreparable harm). Petitioner is likely to succeed on the merits of this Fifth Amendment Claim. Mitchell v. Cuomo, 748 F.2d 804, 806 (2nd cir 1984) ("When an alleged deprivation of a Constitutional Right is involved, most courts hold that no further showing of irreparable injury is necessary.").

## B. Likelihood of Success on the Merits

Petitioner is likely to succeed on the merits of his claim that his continued detention during the COVID-19 Pandemic violates his his Fifth Amendment rights.

The Due Process Clause of the Fifth Amendment to the United States Constitution forbids the government from depriving a person of life, liberty, or property without due process of law. US Const. amend. V. The protection applies to "all

"Persons..." [illegible] "...the Due Process Clause prohibits the government from imposing torture and cruel and unusual punishment and confinement conditions on non-convicted detainees. See Bell v. Wolfish, 441 US 520, 535, 99 S.Ct. 1861, 60 L.Ed. 2d 447 (1979) Under the Due Process Clause a detainee may not be punished prior to an adjudication of guilt." This type of Fifth Amendment claim is analyzed under the same rubric as Eighth Amendment claims brought by prisoners." Villegas v. Metropolitan Government of Nashville, 709 F.3d 563, 565 (6th Cir. 2013). Eighth Amendment claims require a showing of deliberate indifference, See Farmer v. Brennan, 511 US 825, 835, 114 S.Ct. 1970, 128 L.Ed 2d 811 (1994), which has both an objective and a subjective component. Villegas v. Metro. Gov't. of Nashville, 709 F.3d 563, 568, (6th Cir 2013)(citing Harrison v. Ash, 539 F.3d 510, 518 (6th Cir. 2008).

## 1. Objective Component

The objective component is satisfied by showing that, "absent reasonable precautions, an inmate is exposed to a substantial risk of serious harm." Richko v. Wayne Cty., 819 F.3d 907, 915. (6th Cir. 2016)(citing Amick v. Ohio Dep't. of Rehab. & Corr., 521 Fed. Appx. 354, 361 (6th Cir. 2013). A generalized risk is a substantial risk. As the Supreme Court explained in Helling v. McKinney, "We have great difficulty agreeing that prison authorities may not be deliberately indifferent to an inmate's current health problems but may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year." 509 US 25, 33, 11 S.Ct. 2475, 125 L.Ed. 2d 22 (1993). "The Eighth Amendment protects against future harm to inmates is not a novel proposition." Id. "It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them." Id. The ever-growing number of COVID-19 outbreaks in prisons and detention facilities, despite a range of precautionary measures, demonstrates that the risk of a COVID-19 outbreak in Respondent's facility is significant. By the time a case is confirmed, it will almost certainly be too late to protect Petitioner's constitutional rights. Petitioner, so long as he remains detained, is therefore exposed to a substantial risk of serious harm.

## 2. Subjective Component

The subjective component is demonstrated by showing that "(1) the official being sued subjectively perceived facts from which to infer a substantial risk to the prisoner, (2) the official did in fact draw inference, and (3) the official then disregarded that risk." 819 F.3d at 915-16 (citing Rouster v. Cty. of Saginaw, 749 F.3d 437, 446 (6th Cir. 2014) "Because government officials do not readily admit the subjective component of this test, it may be demonstrated in the usual ways, including inference from circumstantial evidence." Richko, 819 F.3d at 916 (citing Dominguez v. Corr. Med. Servs., 555 F.3d 543, 550 (6th Cir. 2009). Additionally "a fact-finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842. Rightfully so: the above analysis pertaining to the risk of irreparable injury reveals that the substantial risk to Petitioner is obvious. Farmer, 511 U.S. at 842.

In light of Petitioner's underlying health conditions, he is not ensured anything close to "reasonable safety." Farmer, 511 U.S. at 844. The only reasonable response by Respondent is the release of Petitioner; any other response demonstrates a disregard of the specific, severe, and life-threatening risk to Petitioner from COVID-19.

For the same reasons, Petitioner's continued detention cannot "reasonably relate to any legitimate government purpose." Bell v. Wolfish, 441 U.S. 520, 536-39, 99 S.Ct. 1861, 60 L.Ed. 2d 447 (1979) (holding that pretrial detention not reasonably related to a legitimate government purpose must be considered punishment and therefore contrary to the Fifth Amendment). Petitioner faces significant risk of death due to COVID-19. Accordingly his continued detention at the Harris County Jail is both unrelated and contrary to the government purpose of carrying out his criminal proceedings. The probability of success that must be demonstrated is unversely proportional to the amount of irreparable injury the movants will suffer absent the stay." Northeast Ohio Coalition for Homeless and Service Employees Intern. Union, Local 1199, 467 F.3d at 1009 (6th Cir. 2006). Given the risk and severity of irreparable harm to Petitioner and the weight of public health evidence indicating release as the only reasonable option under the facts Petitioner has met his burden with respects to the merits of his claim. As explained above, Petitioner has shown a likelihood of success on the merits of his action/claim that given the extraordinary nature of the COVID-19 pandemic, no set of possible conditions of confinement would be sufficient to protect his Fifth Amendment rights. Release from custody represents the only adequate remedy in this case, and it is within this Court's broad equitable power to grant it. See Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 15-16, 91 S.Ct. 1267, 28 L.Ed. 2d 554 (1971) (once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies.").

### 3. Qualified Immunity

Qualified immunity is unavailable as a defense in cases seeking injunctive relief. See Pearson v. Callahan, 555 U.S. 223, 242, 129 S.Ct. 808, 172 L.Ed 2d 565 (2009) (noting that qualified immunity defense is not available in "suits against individuals where injunctive relief is sought in addition to or instead of damages"); Harlow v. Fitzgerald, 457 U.S. 800, 806, 102 S.Ct. 2727, 73 L.Ed. 2d 396 (1982) (describing qualified immunity as "immunity from suits for damages"). Because Petitioner here seeks only declartory and injunctive relief, qualified immunity does not apply.

### C. Balance of Equities and Public Interest

When the government opposes the issuance of a temporary restraining order the final two factors — The Balance of Equities and The Public Interest — merge, because "the government's interest is the public interest." Pursuing America's Greatness v. Fed. Election Comm'n, 831 F.3d 500, 512, 425 U.S. App. D.C. 31 (D.C. Cir. 2016) (citing Nken v. Holder, 556 U.S. 418, 435, 129 S.Ct. 1749, 173 L.Ed. 2d 550 (2009)).

The public interest favors Petitioner's release because of the risk that Petitioner's constitutional rights will be deprived absent an injunction. "It is always in the public interest to prevent the violation of a party's constitutional rights." G&V Lounge Inc. V. Mich. Liquor Control Comm., 23 F.3d 1071, 1079, (6th Cir. 1994).

Additionally, Petitioner's release will protect public health. Given the highly unusual and unique circumstances posed by the COVID-19 virus pandemic and ensuing crisis, "the continued detention of aging or ill detainees does not serve the public's interest." Basank, 2020 US Dist. LEXIS 53191, 2020 WL 1481503, at 6; see also Fraihat v. U.S. Imm. and Customs Enforcement, 5:19 Civ. 1546, ECF No. 81-11

(C.D. Cal. Mar. 24, 2020). ("the design and operation of detention settings promotes the spread of communicable diseases such as COVID-19"); Castillo v. Barr, CV-20-00605-TJH, 2020 US Dist. LEXIS 54425 (C.D. Cal. 2020). Protecting public health and safety is in the public interest. See Neinast v. Bd. of Trustees, 346 F.3d 585, 592 (6th Cir. 2003) (recognizing public health and safety as legitimate government interests).

The public interest and balance of equities demand that the Court protect Petitioner's Constitutional rights and the public health over the continued enforcement of a detention provision that, as applied to Petitioner, is unconstitutional. The remaining factors counsel granting Petitioner relief.

## POINT II

### THE PLAINTIFF/PETITIONER SHOULD NOT BE REQUIRED TO POST SECURITY

Usually a litigant who obtains interim injunctive relief is asked to post security. Rule 65(c), Fed.R.Civ.P. However, the Plaintiff is an indigent prisoner and is unable to post security. The Court has discretion to excuse an impoverished litigant from posting security. Elliott v. Kieseweter, 98 F.3d 47, 60 (3d Cir. 1996) (stating that district courts have discretion to waive the bond requirement contained in Rule 65(c) of the Federal Rules of Civil Procedure if "the balance of the equities weighs overwhelmingly in favor of the party seeking the injunction"); Moltan Co. v. Eagle-Pitcher Industries, Inc., 55 F.3d 1171, 1176 (6th Cir. 1995). In view of the serious medical danger confronting the Plaintiff, the court should grant the relief requested without requiring the posting of security.

## CONCLUSION

Because all factors weigh in favor of issuing emergency injunctive relief, Petitioner prays this Court GRANT his Motion for Temporary Restraining Order - Ordering Petitioner's immediate release from Respondent's custody.

04/11/2020

*Skyler J. Rice*

Skyler Thomas Rice #01956417
Harris County Jail - 5H1
1200 Baker St.
Houston, TX 77002